James E. Cecchi
Lindsey H. Taylor
Donald E. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Frank R. Schirripa
HACH ROSE SCHIRRIPA & CHEVERIE LLP
185 Madison Avenue, 14th Floor
New York, New York 10016
(212) 213-8311

Joseph E. White, III
Jonathan M. Stein
Lester R. Hooker
SAXENA WHITE P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, Florida 33431
(561) 394-3399

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND, On Behalf of Itself and All Others Similarly Situated, and derivatively on behalf of VULCAN MATERIALS CO., <br><br> Plaintiff, <br><br> vs. <br><br> PHILIP J. CARROLL, JR., PHILLIP W. FARMER, H. ALLEN FRANKLIN, DONALD M. JAMES, ANN MCLAUGHLIN KOROLOGOS, DOUGLAS J. MCGREGOR, RICHARD T. O'BRIEN, JAMES T. PROKOPANKO, VINCENT J. TROSINO, KATHLEEN WILSON-THOMPSON, and VULCAN MATERIALS COMPANY, <br><br> Defendants. | Civil Action No.: <br><br><br><br><br><br><br> **COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff Stationary Engineers Local 39 Pension Trust Fund ("Plaintiff"), on its own behalf and on behalf of all others similarly situated, and derivatively in the name of and on behalf of Vulcan Materials Company, by way of Complaint against the Defendants named herein, alleges as follows:

## NATURE OF THE ACTION

1.     This action is both a shareholder class action lawsuit brought on behalf of the public shareholders of Vulcan Materials Company ("Vulcan" or the "Company"), and a derivative lawsuit brought in the name of and on behalf of Vulcan, arising out of the breaches of fiduciary duty by the Company's Board of Directors (the "Board") related to their total rebuff of an offer from Martin Marietta Materials, Inc. ("MMM") of 0.5 shares of MMM for each Vulcan share, which values the Company at $4.7 billion, or $36.69 per share (the "MMM Offer"). The MMM Offer is 15% higher than the average share price for Vulcan for the 10 days prior to December 9, 2010.

2.     MMM made its offer directly to Vulcan shareholders because the Board broke off talks regarding a combination of the two companies and refuses to continue negotiations with MMM on a definitive merger agreement. In fact, in litigation currently pending between the two companies arising out of MMM's Offer, Vulcan stated that the MMM Offer is conditioned on the approval of the Board — a "condition that has no likelihood of being satisfied any time in the foreseeable future, if any." Rather than negotiating in good faith, the Board is impeding Vulcan shareholders from having the opportunity to meaningfully consider and approve of a combination of the Company with MMM. In addition, the Board is using certain defensive measures and protections in order to thwart the possibility of the MMM Offer coming to fruition. In so doing, they are breaching their fiduciary duties to their benefit and at the expense of the

Company's public shareholders.  The Board members also failed and/or refused to fully inform themselves and the Company's shareholders regarding opportunities to maximize shareholder value, including the premium offer by MMM.

3.  The defensive measures and protections implemented by the Board include:

(i)  a staggered Board structure that only allows for one third of the Company's twelve directors to be up for election each year, which requires a potential hostile bidder, including MMM, to win a clean sweep of two consecutive shareholder elections, and which can only be removed by a supermajority vote of 80% of all Company shareholders;

(ii)  the Board has the power to make critical structural changes without shareholder approval, including filling Board vacancies, increasing the size of the Board, and changes to bylaws;

(iii)  the Board can use director questionnaires and other mechanisms to inhibit the nomination of a third party's candidates to the Board;

(iv)  the Company's Restated Certificate of Incorporation (the "Charter") only allows for removal of directors for cause and with the approval of a majority of the Board; and

(v)  the New Jersey Shareholder Protection Act prohibits anyone with a 10% stake in the Company from entering into a merger with Vulcan for five years, absent Board approval, and since Vulcan has not opted out of this statute, MMM is prevented from consummating any acquisition of the Company unless the Board approves such an acquisition.

4.      Whatever the motivation for and validity of any of these actions taken individually – and there is ample basis for challenging each of them – taken together, their effect is to foreclose any premium offer that is in the Company's public shareholder's economic interest to accept and, in fact, the Defendants did rebuff and erect barriers to the MMM proposal, which prevented the individual shareholders from obtaining the benefit of the MMM Offer or alternatives.

5.      The Defendants failed to engage in a careful, independent and deliberate consideration of viable strategic alternatives which would maximize the value of each shareholder's equity interest in the Company, including the MMM Offer.

6.      Under applicable common law, the directors of a publicly held company such as Vulcan have fiduciary duties of care, loyalty, disclosure, good faith and fair dealing and are liable to shareholders for breaches thereof.  Defendants have a fiduciary duty not to allow the corporate machinery to be used in a manner injurious to the Company or the public shareholders, but rather are required to exercise good faith and subordinate their own interests to those of the corporation and the shareholders where their interests conflict.

7.      Defendants have a fiduciary duty to consider, in good faith, a third party bid and further are required to explore a third party's bona fide interest in acquiring the Company and to negotiate in good faith with a bidder on behalf of the Company's shareholders.  Defendants breached their fiduciary duties by failing to engage in any further communication with MMM about its offer, or seriously consider the MMM Offer in an effort to maximize the value of the Company to its public shareholders.

8.      The Individual Defendants were and are engaged in a course of conduct that exhibits their failure to:  (a) evaluate with requisite due care and diligence the benefits to the

Company's shareholders of the MMM Offer; (b) undertake an adequate evaluation of the Company's worth as a potential acquisition candidate; (c) take adequate steps to enhance Vulcan's value and/or attractiveness as an acquisition candidate; (d) effectively expose Vulcan to the marketplace in an effort to create an open auction for the Company; or (e) act independently so that the interests of public shareholders would be protected.  Instead, Defendants sought to chill or block any potential offers for Vulcan.

## JURISDICTION

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that this is an action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District.  In addition, Vulcan is a New Jersey corporation and one or more of the defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

11.     Plaintiff is the owner of common stock of Vulcan and has been the owner of such shares continuously since prior to the wrongs complained of herein.

12.     Nominal defendant Vulcan is a publicly traded New Jersey corporation with its principal place of business at 1200 Urban Center Drive, Birmingham, AL 35242.  Vulcan stock is traded on the New York Stock Exchange under the symbol "VMC."  The Company engages in the production and sale of construction aggregates for the infrastructure industry primarily in the United States.  Vulcan was founded in 1909.

13.     Defendant Philip J. Carroll, Jr. ("Carroll") has served as a director of the Company since 1999.   For serving on the Board, Carroll received over $200,000 in compensation from Vulcan in 2010.  Carroll is a citizen of Texas.

14.     Defendant Phillip W. Farmer ("Farmer") has served as a director of the Company since 1999.  For serving on the Board, Farmer received nearly $210,000 in compensation from Vulcan in 2010.  Farmer is a citizen of Florida.

15.     Defendant H. Allen Franklin ("Franklin") has served as a director of the Company since 2001.  For serving on the Board, Franklin received over $200,000 in compensation from Vulcan in 2010.  Franklin is a citizen of Georgia.

16.     Defendant Donald M. James ("James") has served as a director of the Company since 1996.   In addition, James has served as the Chairman and Chief Executive Officer of Vulcan since May 1997.  For serving on the Board and for serving in his executive positions with the Board, James received over $8 million in total compensation from Vulcan in 2010.  James is a citizen of Alabama.

17.     Defendant Ann McLaughlin Korologos ("Korologos") has served as a director of the Company from 1990-2004 and since 2007.  For serving on the Board, Korologos received nearly $180,000 in compensation from Vulcan in 2010.  Korologos is a citizen of Washington, D.C.

18.     Defendant Douglas J. McGregor ("McGregor") has served as a director of the Company since 1992.  For serving on the Board, McGregor received nearly $210,000 in compensation from Vulcan in 2010.  McGregor is a citizen of Ohio.

19.     Defendant Richard T. O'Brien ("O'Brien") has served as a director of the Company since 2008.  For serving on the Board, O'Brien received over $185,000 in compensation from Vulcan in 2010.  O'Brien is a citizen of Colorado.

20.     Defendant James T. Prokopanko ("Prokopanko") has served as a director of the Company since 2009.   For serving on the Board, Prokopanko received over $175,000 in compensation from Vulcan in 2010.  Prokopanko is a citizen of Minnesota.

21.     Defendant Vincent J. Trosino ("Trosino") has served as a director of the Company since 2003.   For serving on the Board, Trosino received over $194,000 in compensation from Vulcan in 2010.  Trosino is a citizen of Florida.

22.     Defendant Kathleen Wilson-Thompson ("Wilson-Thompson") has served as a director of the Company since 2009.  For serving on the Board, Wilson-Thompson received over $194,000 in compensation from Vulcan in 2010.

23.     The Defendants identified in paragraphs 11 through 21 collectively constitute the entirety of the Board.  These individuals are hereinafter referred to collectively as the "Individual Defendants." As members of the Board, these Defendants are in a fiduciary relationship with the Company, as well as Plaintiff and all other public shareholders of Vulcan, and owe them the highest obligations of due care, loyalty, good faith and candor.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on its own behalf and as a class action, on behalf of all stockholders of Vulcan, except Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants, who are threatened with injury arising from Defendants' actions as is described more fully below (the "Class").

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of December 12, 2011, there were 129,232,928 shares of Vulcan common stock outstanding, held by hundreds, if not thousands, of shareholders.  The number and identities of the record holders of the Company's securities can easily be determined from the stock transfer records maintained by Vulcan or its agents.

27.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.  The likelihood of individual class members prosecuting separate claims is remote.

28.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.  Among the questions of law and fact common to the Class, which predominate over questions affecting any individual class member are, *inter alia*, the following:

(i)      Whether the Defendants failed to adequately consider the MMM Offer;

(ii)     Whether the Defendants have adopted onerous and unlawful defensive measures in an effort to entrench themselves in the Company at the direct expense of the Company's public shareholders;

(iii)    Whether Defendants have failed to take all reasonable steps necessary to ensure that Vulcan's stockholders receive the maximum value realizable for their shares of Vulcan common stock in a transaction effecting the change of corporate control; and

(iv)     Whether Plaintiff and the other members of the Class would be irreparably damaged if the Proposed Merger complained of herein was consummated.

8

29.     Plaintiff is a member of the Class and is committed to prosecuting this action. Plaintiff has retained competent counsel experienced in litigation of this nature.  The claims of the Plaintiff are typical of the claims of the other members of the Class, and Plaintiff has the same interests as the other members of the Class.  Plaintiff does not have interests antagonistic to or in conflict with those it seeks to represent.  Plaintiff is therefore an adequate representative of the Class.

30.     The likelihood of individual class members prosecuting separate individual actions is remote due to the relatively small loss suffered by each class member as compared to the burden and expense of prosecuting litigation of this nature and magnitude.  Absent a class action, Defendants are likely to avoid liability for their wrongdoing, and class members are unlikely to obtain redress for their wrongs alleged herein.  There are no difficulties likely to be encountered in the management of the Class claims.  This Court is an appropriate forum for this dispute.

## SUBSTANTIVE ALLEGATIONS
### Background of Vulcan

31.     Vulcan engages in the production and sale of construction aggregates for the infrastructure industry primarily in the United States.  The Company operates in four segments: Aggregates, Concrete, Asphalt Mix, and Cement.   The Aggregates segment produces construction aggregates, including crushed stone, sand and gravel, and recycled concrete. Vulcan's aggregates are used in public and private sector construction projects, including highways, airports, water and sewer systems, industrial manufacturing facilities, and residential and nonresidential buildings, as well as railroad track ballast.  The Company's Concrete segment produces and sells ready-mixed concrete in Arizona, California, Florida, Georgia, Maryland,

New Mexico, Texas, and Virginia; and block and pre-cast beams, as well as resells purchased building materials for use with ready-mixed concrete and concrete block.

32.     The Asphalt Mix segment produces and sells asphalt mix in Arizona, California, New Mexico, and Texas.  The Cement segment produces Portland and masonry cement in bulk form and bags to the concrete products industry.  It also mines, produces, and sells calcium products for the animal feed, paint, plastics, and joint compound industries. In addition, this segment imports cement, clinker, and slag to resell, as well as to blend, bag, or reprocess into specialty cements.

33.     Vulcan was formerly known as Virginia Holdco, Inc. and changed its name to Vulcan Materials Company in November 2007.   Vulcan was founded in 1909 and is headquartered in Birmingham, Alabama.

## Background of MMM

34.     MMM, together with its subsidiaries, engages in the production and sale of aggregates for the construction industry primarily in the United States, Canada, the Bahamas, and the Caribbean Islands.  It mines, processes, and sells granite, limestone, sand, gravel, and other aggregate products for use in the public infrastructure, and nonresidential and residential construction industries, as well as in the agriculture, railroad ballast, chemical, and other applications.

35.     MMM also offers asphalt, ready mixed concrete, and road paving products.  In addition, it manufactures and markets magnesia-based chemical products for the industrial, agricultural, and environmental applications; and dolomitic lime primarily for use in the steel industry.  These chemical products are used in flame retardants, wastewater treatment, pulp and

paper production, and other environmental applications. MMM was founded in 1993 and is based in Raleigh, North Carolina.

### Vulcan's Declining Financial and Operational Prospects

36.     Over the past several quarters, Vulcan has experienced declining financial and operating performance leading to missed earnings estimates and multiple credit downgrades, which in turn has caused the Company to experience a steady decline in its stock price and dividends.

37.     For instance, on February 2, 2011, Vulcan issued a press release in which it announced disappointing financial and operating results for 2010.  The press release stated in pertinent part as follows:

> Vulcan Materials Company (NYSE: VMC), the nation's largest producer of construction aggregates; announced results today for 2010 and the fourth quarter ended December 31, 2010.
>
> Commenting for the Company, Don James, Vulcan's Chairman and Chief Executive Officer, stated, "The length and depth of the decline in construction activity and aggregates demand during this economic downturn have been unprecedented. For Vulcan, aggregates shipments in 2010 were one-half the level shipped in 2006 when demand peaked. That said, we start 2011 with optimism that the decline in demand for our products bottomed in 2010 and that growth in shipments is ahead of us.
>
> "The United States economy is improving with many economic measures indicating that recovery is underway. To date, the economic recovery has not had a significant effect on some of our key end markets or key regional markets. However, we are encouraged by overall shipping trends for our products. Trailing twelve month aggregates shipments have increased modestly since February of last year while overall pricing for aggregates has remained reasonably stable during the worst year of demand."
>
> Full Year Summary and Comparisons with the Prior Year
>
> - Net earnings were a loss of $96 million or $0.75 per diluted share.
> - Cash earnings were $228 million and EBITDA was $371 million.
> - Net earnings, cash earnings and EBITDA all include a net pretax expense of $22 million. This net pretax charge includes amounts related to the

11

settlement of a lawsuit in Illinois, the gain associated with the sale of non-strategic assets in rural Virginia, as well as certain other fourth quarter adjustments and charges.

- Unit cost for diesel fuel and liquid asphalt increased 30 percent and 20 percent respectively, reducing pretax earnings $51 million.
- Freight-adjusted aggregates pricing declined approximately 2 percent due principally to weakness in Florida and California.
- Aggregates shipments declined approximately 2 percent, reflecting varied market demand conditions across our footprint.
- Full year capital spending was $86 million, compared with $110 million in the prior year.

Commenting on the full year, Mr. James stated, "Throughout the year, we have managed our business to maximize cash generation. For example, we further reduced inventory levels of aggregates. While this action negatively affected GAAP earnings, it increased cash generation and better positions us to increase production and earnings as demand recovers. During 2010, we also continued to reduce our overhead expenses. Costs associated with implementing some of these reductions increased selling, administrative and general (SAG) expenses in the fourth quarter and full year; however these overhead reductions better position us for earnings growth in 2011 and beyond. On a comparable basis, full year SAG costs in 2010 were approximately $4 million lower than the prior year. Finally, benefits related to our project to replace legacy IT systems began to be realized in 2010, lowering SAG costs for the year. We expect additional benefits from this project in 2011."

38.   On May 4, 2011, Vulcan issued a press release announcing financial and operational results for the first quarter 2011.  The press release provided in pertinent part as follows:

First Quarter Summary and Comparisons with the Prior Year

- Freight-adjusted aggregates pricing approximated the prior year level.
- Aggregates shipments declined approximately 3 percent, reflecting varied market conditions across our footprint as well as significantly more wet weather in March in many markets.
- Average unit selling prices for both ready-mixed concrete and asphalt mix increased 4 percent, contributing to higher unit materials margins in both product lines.
- Unit cost for diesel fuel and liquid asphalt increased 34 percent and 12 percent respectively, reducing pretax earnings by $10 million. Most of this earnings effect was offset by production efficiency gains in aggregates and higher pricing for asphalt mix.

- Selling, administrative and general (SAG) expenses were down from the prior year due primarily to the $9 million noncash charge recorded in the prior year for the fair market value of donated real estate.
- Net earnings were a loss of $55 million, or $0.42 per diluted share. The quarter's results include income of $0.08 per diluted share from discontinued operations as well as $0.12 per diluted share for the insurance arbitration award to the Company for recovery of settlement costs and legal costs related to the lawsuit settled last year with the Illinois Department of Transportation.

* * *

First quarter aggregates earnings were lower than the prior year due mostly to lower shipments. A number of Vulcan-served markets, most notably markets in California, the mid-Atlantic and the Southeast experienced unusually wet weather in March. Despite the inclement March weather, our Virginia, Tennessee and Georgia aggregates businesses increased shipments versus the prior year's first quarter, due primarily to stronger demand from public infrastructure projects. Markets that experienced declines in shipments include South Carolina, Florida and along the Gulf Coast.

39.    On August 2, 2011, Vulcan issued financial results for the second quarter of 2011.

Commenting on the results, Defendant James stated that "Business conditions remained challenging in the second quarter due to weaker than expected demand, as well as to April's severe weather, flooding throughout the quarter in our river markets and a significant increase in diesel fuel costs."   The press release provided the following highlights of the second quarter financial results:

- The average unit sales price increased in all major product lines.
  o    Freight-adjusted aggregates prices increased 2.5 percent, reflecting improved pricing across many markets;
  o    Asphalt mix prices increased 8 percent, leading to improved unit materials margin despite higher liquid asphalt costs;
  o    Ready-mixed concrete prices increased 8 percent with resultant improvement in unit materials margin; and
  o    Cement prices increased 2 percent.
- Aggregates shipments declined 9 percent, reflecting the impact of severe storms in April across many of the Company's markets. Markets in California, Virginia and Maryland realized increased shipments due primarily to strength in infrastructure projects.

- Unit costs for diesel fuel and liquid asphalt increased 43 percent and 17 percent, respectively, reducing pretax earnings by $19 million.
- Selling, administrative and general (SAG) expenses were $7 million lower than the prior year.
- Earnings from continuing operations were a loss of $7 million, or $0.05 per diluted share, compared to a loss of $23 million, or $0.18 per diluted share, in the prior year.
  - o The current year's loss includes a $0.12 per diluted share charge related to the Company's tender offer and debt retirement in June;
  - o The prior year's loss includes a $0.21 per diluted share charge due to the settlement of a lawsuit in Illinois; and
  - o Excluding these specific charges, earnings from continuing operations were $9 million, or $0.07 per diluted share, compared to $5 million, or $0.03 per diluted share in the prior year.

40.    On November 2, 2011, the Company issued a press release announcing third quarter 2011 financial and operating results.   Commenting on the results, Defendant James stated: "Business conditions remained challenging in the third quarter. The fragile economic recovery and absence of meaningful job growth continued to hamper construction activity while diesel fuel and liquid asphalt costs remained at elevated levels."   The highlights of the third quarter financial results are as follows:

- The average unit sales price increased in most product lines.
  - o Freight-adjusted aggregates prices increased 1 percent;
  - o Asphalt mix prices increased 10 percent;
  - o Ready-mixed concrete prices increased 6 percent.
- Aggregates shipments declined 2 percent.
- Unit costs for diesel fuel and liquid asphalt increased 40 percent and 20 percent, respectively, reducing pretax earnings by $21 million.
- Selling, administrative and general (SAG) expenses were $10 million lower than the prior year.
- Earnings from continuing operations were $22 million, or $0.17 per diluted share, compared to $11 million, or $0.08 per diluted share, in the prior year.
- EBITDA was $194 million versus $150 million in the prior year.
- The current quarter's earnings include $63 million in EBITDA, or $0.30 per diluted share, related to the sale of non-strategic aggregates facilities and recovery from an insurer of legal settlement costs related to the Illinois lawsuit settled in the second quarter of last year.

    o      Excluding these two items, EBITDA was $131 million and earnings from continuing operations were a loss of $0.13 per diluted share.

41.    Concurrent with the Company's steady stream of disappointing financial and operation results, Vulcan has also drastically slashed its quarterly dividends. Prior to July 2009, the Company paid a quarterly dividend of $0.49 per share. On September 10, 2011, the Company dropped the dividend to $0.25 per share, and on October 14, 2011, Vulcan slashed it to only $0.01.

42.    In addition to disappointing financial results and a slashed dividend, Vulcan has also had its credit rating downgraded on numerous occasions by the credit rating agencies. For instance, in November 2008, Moody's downgraded the Company's credit rating based on, among other things, Vulcan's "weaker than expected operating performance" and "inability to reduce financial leverage" following the Company's acquisition of Florida Rock Industries Inc.—a transaction which increased Vulcan's exposure to construction declines and elevated the Company's debt levels by over $3 billion.

43.    In August 2010, Moody's again downgraded the Company's credit rating as Vulcan continued to experience declining operating and financial performance. In fact, for 2010, Vulcan reported a net loss of nearly $100 million and declining sales for the third consecutive year. This performance continued into 2011, and on March 4, 2011, Moody's again downgraded the Company's credit rating, citing the expectation that Vulcan's financial results would remain weak throughout 2011.

44.    On September 16, 2011, Moody's once again downgraded the Company's credit rating as Vulcan continued to report weak financial and operating figures as well as high debt

levels.  Moody's further noted that its rating of Vulcan "would likely be downgraded" further if the Company "does not demonstrate substantial progress towards improving its margins."

45.     On October 24, 2011, Moody's issued a report entitled, "Vulcan Materials vs. Martin Marietta Materials, A Comparison of the Two Largest US Aggregates Producers."  In this report, Moody's stated that the Company, "once the stronger of the two US rated aggregates producer, is now the weaker one. … In response to the company's deteriorating condition, we've downgraded its credit ratings five notches over the past three years."

46.     In addition to Moody's, other rating agencies have voiced similar concerns about the Company and issued their own downgrades of Vulcan's credit rating.  For instance, S&P has repeatedly downgraded Vulcan over the course of the last few years.  In a report on September 26, 2011, S&P gave the Company a negative rating, down from stable, partly because of weak operating results.  The report stated that S&P does not expect to see significant improvement at Vulcan until 2013.  Both S&P and Moody's have current ratings for the Company that is at junk status.

47.     The Company has experienced a consisted downward trend in earnings and a negative 115% earnings growth rate for fiscal year 2011.  In the midst of this continued negative developments regarding the Company, Vulcan's stock price has suffered tremendously.  While once trading at nearly $130 per share in April 2007, the Company's stock has crashed over 75%.  In October 2011, Vulcan's shares reached a 5-year low of $25.

**The MMM Offer**

48.     Over the last few years, Vulcan and MMM have discussed a potential combination of the two companies on various occasions.  A merger between the two companies will assuredly result in cost synergies and benefits to the shareholders of both companies.  In

16

fact, the October 24, 2011 Moody's report noted, among other MMM positives, that MMM "has maintained its credit rating since late 2008," has "better withstood the contraction in public and private construction of the past several years," and has "also been more effective at cutting costs and controlling its debt levels than Vulcan." Despite the apparent benefits of a combination to the shareholders of both companies, Vulcan's Board decided to stop pursuing negotiations with MMM.

49.     On December 12, 2011, MMM announced that it would deliver a proposal to Vulcan and commence an exchange offer to effect a business combination with Vulcan. To that end, MMM issued a press release on this date entitled, "Martin Marietta Materials, Inc. Proposes Combination with Vulcan Materials Company in Stock-for-Stock Transaction; Commences Exchange Offer."

50.     The press release emphasizes that the MMM Offer includes an 18% premium to Vulcan's shareholders based on the average per share prices for both companies during the 30-day period ended December 9, 2011. Moreover, the MMM Offer anticipates that directors from both companies will join the board of directors of the combined entity, that executives of Vulcan will serve as executives of the combined entity, including Defendant James as Chairman, and that the combined entity will maintain a major presence in Birmingham, Alabama, where Vulcan's executive offices are located. The MMM press release also included numerous bullet points highlighting the cost savings, synergies and other benefits that would arise as a result of a combination between Vulcan and MMM. The release provided in pertinent part as follows:

**Transaction Would Provide Vulcan's Shareholders an Upfront Premium and Over 58% Ongoing Ownership in the Combined Company**

**$200 Million to $250 Million of Annual Cost Synergies Expected**

**Transaction Would Create a U.S.-Based Company as the Global Leader in Aggregates**

**Companies Would Be Stronger Together in Uncertain Economic Environment**

**Transaction Would Improve Vulcan's Credit Profile and Provide Vulcan Shareholders a Cash Dividend at 20 Times Vulcan's Current Level**

RALEIGH, N.C.--(BUSINESS WIRE)-- Martin Marietta Materials, Inc. (NYSE: MLM) today announced that it has delivered a proposal to Vulcan Materials Company (NYSE: VMC) and commenced an exchange offer to effect a business combination with Vulcan that would create a U.S.-based company that is the global leader in construction aggregates with a footprint reaching across North America. As of December 9, 2011, the combined market capitalization was $7.7 billion and the combined total enterprise value was $11.4 billion. The combined mineral reserves of the two companies would be 28 billion tons.

Ward Nye, Martin Marietta's President and Chief Executive Officer said, "The combination of Martin Marietta and Vulcan is a compelling opportunity for both companies' shareholders, customers, employees and the communities we serve. By bringing together our highly complementary assets, we have the opportunity to create the global leader in aggregates, led by the best team in the industry, drawn from both companies. The combined company will have one of the industry's strongest balance sheets and, as we achieve expected synergies of $200 to $250 million and continue to adhere to Martin Marietta's strict operational and financial discipline, the company will be well positioned to pursue a wide range of attractive growth opportunities and to continue delivering value to shareholders.

"We also intend to maintain the dividend for the combined company at Martin Marietta's current rate of $1.60 per Martin Marietta share annually, or the equivalent of $0.80 per Vulcan share annually, based on the proposed exchange ratio. This dividend rate is 20 times Vulcan's current level," said Mr. Nye.

The proposal, including the exchange offer, has the unanimous support of the Martin Marietta Board of Directors. Under the terms of the exchange offer, each outstanding share of Vulcan will be exchanged for 0.50 Martin Marietta shares. The offer represents a premium for Vulcan shareholders of 15% to the average exchange ratio based on the closing share prices for Vulcan and Martin Marietta during the 10-day period ended December 9, 2011 and 18% to the average

exchange ratio based on the closing share prices for Vulcan and Martin Marietta during the 30-day period ended December 9, 2011.

"We are bringing our proposal directly to Vulcan's shareholders after Vulcan ceased participating in private discussions toward a negotiated transaction, which commenced over a year and a half ago," Mr. Nye concluded.

Martin Marietta's proposal contemplates directors from both Martin Marietta and Vulcan serving on the combined company's Board. Furthermore, it proposes Don James, Vulcan's Chairman and Chief Executive Officer, serve as Chairman of the Board, and that Ward Nye serve as President and Chief Executive Officer, with executives from both companies on the senior management team. Under the proposal, the combined company would be headquartered in Raleigh, North Carolina, where Martin Marietta is based, and maintain a major presence in Birmingham, Alabama, where Vulcan is based.

51.    MMM's press release referenced a letter that it sent to Vulcan regarding the companies' negotiations and MMM's intention to commence an exchange offer.  The text of the letter was also included in the press release:

December 12, 2011

Mr. Donald M. James

Chairman and Chief Executive Officer

Vulcan Materials Company

1200 Urban Center Drive

Birmingham, Alabama 35242

Dear Don:

More than a year and a half ago, you and I (and, on several occasions, members of our senior management teams) began to explore the financial and strategic merits and potential terms of a business combination of Vulcan Materials Company ("Vulcan") and Martin Marietta Materials, Inc. ("Martin Marietta"). Despite Martin Marietta's clear, continuing interest, some months ago Vulcan disengaged from discussions. Martin Marietta continues to believe that a strategic combination of our two companies is compelling financially and operationally, and that such a combination presents our respective shareholders with a significant value creation opportunity and brings great benefits to our respective customers and employees.

Recent events, including the fragile state of the U.S. economy, the lack of visibility as to when a sustainable recovery will take place, and the uncertainty surrounding government spending on infrastructure projects, only strengthen the rationale behind a combination. Combining our two complementary companies makes excellent industrial sense and establishes a U.S.-based company that is the global leader in our industry. The continued uncertainty regarding the timing and level of recovery in the macroeconomic environment underscores the immediate value your shareholders would receive in a business combination with Martin Marietta, through the conversion of their Vulcan investment into the stock of a more stable and financially sound combined company that pays a meaningful dividend — equivalent to 20 times Vulcan's current dividend per share. In addition, we believe your shareholders would realize long-term value in a business combination with Martin Marietta from the anticipated improvement in share price derived from the expected significant synergies resulting from the combination of our companies.

Martin Marietta's Board of Directors is, and I personally am, disappointed that despite these substantial benefits, Vulcan has been unwilling to move ahead towards a definitive agreement. We believe our proposal is compelling and transformative for the stakeholders of both Vulcan and Martin Marietta. In light of Vulcan's reluctance to consider further this value-enhancing opportunity, Martin Marietta's Board of Directors has unanimously concluded that the time has come to take steps intended to result in prompt and fair consideration of our proposal on behalf of Vulcan's shareholders.

Let me provide you and your Board with the key aspects of our proposal:

- We are proposing a stock-for-stock, tax-free transaction, in which each outstanding share of Vulcan common stock would be exchanged for 0.50 shares of Martin Marietta common stock. This exchange ratio represents a premium for Vulcan shareholders of 15% to the average exchange ratio based on closing share prices for Vulcan and Martin Marietta during the 10-day period ended December 9, 2011 and 18% to the average exchange ratio based on closing share prices for Vulcan and Martin Marietta during the 30-day period ended December 9, 2011.

- We are proposing a combined company board, with you as Chairman of the Board.

- We are proposing a senior management team that would consist of me as President and Chief Executive Officer and other senior leaders from each organization based on a "best athlete" approach.

- We are proposing to maintain a major presence in Birmingham.

- We are proposing to change the name of the combined company to reflect the names of each of our respective organizations.

The proposed transaction will, in our view, provide important benefits for both companies' stakeholders — investors, employees, and the customers we serve — that will be particularly valuable in the current uncertain economic climate:

- Substantial Cost Synergies. We anticipate significant cost synergies ranging from $200 million to $250 million, derived from a combination of operating efficiencies and elimination of duplicate functions. These are savings that would benefit all shareholders and customers of the combined company. Vulcan's shareholders would participate in the value created by these synergies as well as best-in-class financial performance. In addressing cost synergies, your Board and shareholders should be aware that we are using our estimates, which are realistic and achievable under our disciplined and responsible cost management philosophy, and are quite a bit higher than your estimates of synergies. We believe our consistent cost management leadership within our industry underscores the credibility of our estimates. For example, from 2007 to the third quarter of 2011, Martin Marietta's SG&A as a percent of revenue has declined from 8.0% to 7.9%, while Vulcan's has increased from 9.3% to 12.0%.

- Complementary Geographic Footprints / Global Aggregates Leader. The combination of complementary geographic footprints will create a U.S.-based company that is the clear global leader in aggregates, and will result in a company that can deliver enhanced product offerings and service to customers. The combined company would have an outstanding asset base that will create value for its shareholders over both the short and long term. Among other things, greatly increased scale provides a broader set of opportunities for organic and inorganic growth. From our understanding of the market, it is fair to say that any asset dispositions necessary to support regulatory approvals could be readily accomplished on a fast timeline given the likely interest from various buyers. Moreover, our recent asset swap that resulted in the disposition of our River assets reduces regulatory concerns.

- Strong Financial Position. The combined company will have a significantly stronger balance sheet than Vulcan currently possesses. The combined company's net debt would be 5.6x combined LTM adjusted EBITDA, excluding synergies, and 4.1x — 4.3x combined LTM adjusted EBITDA, including synergies of $200 million — $250 million, as of September 30, 2011, relative to Vulcan's net debt of 8.9x LTM adjusted EBITDA, as of the same date. This would help Vulcan to achieve one of its core objectives — enhanced financial flexibility through deleveraging. We expect the combined company credit rating to be higher than Vulcan's is at present.

- <u>Improved Cash Flows / Meaningful Dividend</u>. Finally, because the proposed transaction is being structured as a tax-efficient, stock-for-stock transaction, the combined company will have significant cash flow, giving it the ability to pay a meaningful quarterly cash dividend. Indeed, it is our objective to maintain the dividend at Martin Marietta's current rate ($1.60 per Martin Marietta share annually, equivalent to $0.80 per Vulcan share annually, based on the proposed exchange ratio). In light of Vulcan's recent decrease in its dividend (to $0.04 per Vulcan share annually), we believe Vulcan's shareholders will find this aspect of the proposal attractive.

We believe the substantial overlap between the shareholders of Martin Marietta and Vulcan will reinforce the benefit from the value-creating combination of our two companies. Further, we believe that Martin Marietta and Vulcan employees would benefit from the greater scale and strength of the combined company.

In connection with delivering this proposal letter, we are taking the following additional steps:

- We are providing you with a proposed transaction agreement that sets forth in additional detail the terms described in this proposal letter.

- We are commencing a first-step exchange offer, reflecting the same exchange ratio as provided in the transaction agreement. This exchange offer, subject to the conditions specified therein, will give Vulcan shareholders the opportunity to exchange their shares at the earliest time for Martin Marietta shares.

- We are advising you of Martin Marietta's intention to submit the names of five nominees (the "Nominees") for election as independent directors at Vulcan's 2012 Annual Meeting, and accordingly are requesting from Vulcan's Secretary the written questionnaire, and the written representation and agreement, referenced in Section 1.05 of Vulcan's By-Laws.

- Earlier today, Martin Marietta commenced a lawsuit in Delaware Chancery Court and in New Jersey state court in furtherance of its effort to ensure that Vulcan's shareholders have the opportunity to assess directly Martin Marietta's proposal.

Please know that it remains our strong preference to execute this transaction on a negotiated basis with Vulcan's current Board of Directors. In furtherance of this approach, my team and I are prepared to engage immediately with the Vulcan team. In addition, we and our advisers, Deutsche Bank Securities Inc., J.P. Morgan Securities LLC and Skadden, Arps, Slate, Meagher & Flom LLP, are prepared to begin immediately the process of negotiating a definitive agreement. We believe that we can complete due diligence, negotiate a definitive agreement

and obtain final Martin Marietta Board approval quickly. We are prepared to provide reciprocal due diligence to Vulcan.

This letter and the accompanying transaction agreement are not binding and do not represent or create any legally binding or enforceable obligations. No such obligations will be imposed on either party unless and until a definitive agreement is signed by Martin Marietta and Vulcan.

As analysts and industry observers have long speculated, our two companies are highly complementary and a combination makes a great deal of strategic and financial sense — and we agree. It is our hope that you and your Board will carefully evaluate the financial and operational benefits of this now-public proposal and elect to engage in a productive dialogue with us so that, together, we can execute this very compelling strategic business combination with minimal disruption.

Should you have any questions concerning this proposal, I would be pleased to speak with you at any time.

Sincerely,

C. Howard Nye

cc: Board of Directors of Vulcan

52.    In response to MMM's press release, Vulcan issued a press release on December 12, 2011 entitled, "Vulcan Materials Board of Directors to Review Unsolicited Offer From Martin Marietta Materials."  The press release confirmed that the Company had received the MMM offer and letter.  The release read in relevant part:

Shareholders Advised to Take No Action Pending Review

BIRMINGHAM, Ala., Dec. 12, 2011 /PRNewswire/ --  Vulcan Materials Company (NYSE: VMC), the nation's largest producer of construction aggregates, today confirmed that Martin Marietta Materials, Inc. (NYSE: MLM) has commenced an unsolicited exchange offer to acquire all outstanding common shares of Vulcan Materials Company at a fixed exchange ratio of 0.50 shares of Martin Marietta Materials common stock for each share of Vulcan Materials common stock.

Consistent with its fiduciary duties and in consultation with its independent financial and legal advisors, the Board of Directors of Vulcan Materials will

carefully review the proposal and determine the course of action that it believes is in the best interests of the Company and its shareholders.

The Board intends to advise shareholders of its recommendation regarding the exchange offer within ten business days by making available to shareholders and filing with the Securities and Exchange Commission a solicitation/recommendation statement on Schedule 14D-9.

Vulcan Materials shareholders are advised to take no action at this time pending the review of the proposed exchange offer by the Vulcan Materials' Board.

Goldman, Sachs & Co. is acting as financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Vulcan Materials.

53.     On December 22, 2011, Vulcan issued a press release entitled, "Vulcan Board of Directors Unanimously Rejects Martin Marietta's Unsolicited Exchange Offer."  In the press release, the Company provided the following rationale concerning its reasons for unilaterally rejecting the MMM offer:

BIRMINGHAM, Ala., Dec. 22, 2011 /PRNewswire/ -- Vulcan Materials Company (NYSE: VMC) today announced that its Board of Directors, after consultation with its independent financial and legal advisors, unanimously determined that the Martin Marietta Materials, Inc. (NYSE: MLM) exchange offer to acquire Vulcan at a fixed exchange ratio of 0.50 shares of Martin Marietta common stock for each Vulcan common share is inadequate and not in the best interests of Vulcan and its shareholders.  Accordingly, the Board strongly recommends that shareholders not tender any shares to Martin Marietta.

"Our Board's position is clear – shareholders should reject Martin Marietta's lowball and opportunistic exchange offer," said Donald M. James, Chairman and Chief Executive Officer of Vulcan Materials.  "The offer, made at a low point in the economic and industry cycle, does not come close to appropriately compensating shareholders for Vulcan's strategic locations and leading positions in high growth markets, unparalleled reserve base, and proven ability to deliver rapid profitability and cash flow growth in economic recoveries.  Martin Marietta is obviously trying to take value that rightly belongs wholly to Vulcan shareholders."

The Vulcan Board concluded that the Company is much better positioned to capitalize on economic recovery than Martin Marietta.  Vulcan has a stronger presence in the most attractive U.S. markets and a significantly more profitable aggregates business.  It also noted that Martin Marietta's offer carries significant execution risk, further eroding the value of the offer.  While the Company had

explored a possible combination with Martin Marietta in the past, it ultimately determined that a combination was not in the best interests of the Company or its shareholders, as detailed in Vulcan's 14D-9 filing today.

Among the specific reasons cited in Vulcan's Schedule 14D-9 for recommending that shareholders reject the Martin Marietta offer are the following:

- **The offer is disadvantageous to Vulcan shareholders and substantially undervalues Vulcan and its future prospects.**
  - o Vulcan's reserve positions and operating facilities are located in attractive markets that have higher long-term growth potential than those of Martin Marietta.
  - o Vulcan historically emerges from recessionary periods with significant upside earnings growth.
  - o Vulcan has managed its aggregates business to achieve greater unit profitability than Martin Marietta.
  - o The premium implied by the offer is significantly lower than those achieved in previous transactions in the construction materials industry.
- **The transaction proposed by Martin Marietta would not enhance shareholder value in the future.**
  - o Value-destructive divestitures required by the U.S. Department of Justice would harm the financial results of a combined company.
  - o Martin Marietta's projected synergy claims are aggressive and subject to substantial execution risks.
  - o Vulcan is already achieving on a stand-alone basis much of the value of the synergy benefits put forward by Martin Marietta.
  - o The proposed transaction would have significant opportunity costs for Vulcan and its shareholders potentially precluding or foreclosing other value creating alternatives or initiatives.
- **The timing of the offer is opportunistic, seeking to exploit cyclical lows.**
  - o The offer seeks to exploit a historic downturn in U.S. construction spending and its timing seeks to capitalize on a ten-year trough in the trading prices of Vulcan common stock.
  - o Shares of Vulcan common stock have traded above the implied value of the offer for 85% of the trading days over the ten years preceding the offer.
  - o The exchange ratio of 0.50x is significantly lower than historical relative trading values of the two companies.
- **The offer is illegal.**
  - o Prior to launching its unsolicited offer, Martin Marietta obtained from Vulcan highly sensitive, material, non-public and confidential information under two separate agreements. Martin Marietta's misuse and improper disclosure of critical confidential information in connection with its offer is a material breach of these

agreements and a violation of federal securities laws. Martin Marietta not only illegally disclosed confidential information in breach of these agreements, it also failed to disclose that, in violation of federal securities laws, it is in possession of material, non-public proprietary information about Vulcan. Therefore, Vulcan has commenced litigation against Martin Marietta in the U.S. District Court for the Northern District of Alabama, as well as a counterclaim in Delaware, to enjoin the offer and enforce its rights under the agreements and the federal securities laws.

- **The offer is subject to antitrust uncertainty and is highly conditional.**
  o Martin Marietta is proposing the combination of the two largest producers of construction aggregates in the U.S. Based on Vulcan's analysis and experience with acquisitions, the Vulcan Board anticipates that the Department of Justice will likely require the divestiture of significant assets in key markets.
  o The Vulcan Board believes that the significant conditionality of the offer and the required antitrust approvals create substantial uncertainty and risk as to when or whether the offer can be completed.

- **The Vulcan Board has received an inadequacy opinion from Goldman Sachs.**
  o The Vulcan Board believes that the offer substantially undervalues the Company. Goldman Sachs rendered an opinion to the Vulcan Board that as of December 19, 2011, and based upon and subject to the factors and assumptions set forth in the written opinion, the consideration proposed to be paid to the holders of Vulcan shares pursuant to the offer was inadequate from a financial point of view to such holders. The full text of the written opinion of Goldman Sachs, dated December 19, 2011, which sets forth the assumptions made, procedures followed, matters considered and limitations on the review undertaken in connection with such opinion, is attached to the Company's 14D-9 filing as Annex B. Goldman Sachs provided its opinion for the information and assistance of the Vulcan Board in connection with its consideration of the offer, and it is not a recommendation as to whether or not any holder of Vulcan common stock should tender such shares in connection with the offer or any other matter.

- **Martin Marietta's proposed transaction would be harmful to important Vulcan constituencies.**
  o In evaluating the offer, the Vulcan Board also considered the effect that the proposed transactions would have on constituencies in addition to Vulcan's shareholders, including its employees and the communities in which Vulcan operates.

54.    Also on December 22, 2011, Vulcan filed a Form SC 14D9 (the "Recommendation Statement") in which it recommended that the Company's shareholders reject the MMM offer.    The Recommendation Statement included the following solicitation/recommendation from the Vulcan Board:

> After careful consideration, including review of the terms and conditions of the Offer in consultation with Vulcan's financial and outside legal advisors, the Vulcan Board, by unanimous vote at a meeting on December 19, 2011, determined that the Offer is not in the best interests of Vulcan's shareholders. **Accordingly, for the reasons described in more detail below, the Vulcan Board unanimously recommends that Vulcan's shareholders reject the Offer and NOT tender any of their shares of Vulcan Common Stock to Martin Marietta pursuant to the Offer.**

55.    Later on December 22, 2011, MMM issued a press release entitled, "Martin Marietta Materials, Inc. Responds to Vulcan Materials Company Announcement."  In the press release, MMM reiterated its view that a combination of Vulcan and MMM would be highly beneficial to the shareholders of both companies, and that it would continue its attempts to facilitate such a combination:

> RALEIGH, N.C.--(BUSINESS WIRE)-- Martin Marietta Materials, Inc. (NYSE: MLM) issued the following statement in response to today's announcement by Vulcan Materials Company (NYSE: VMC):
>
> Ward Nye, Martin Marietta President and Chief Executive Officer, said, "The announcement made by Vulcan today in response to our business combination proposal does not change our view — and we believe, the view of many Vulcan shareholders — that our offer represents a compelling opportunity for Vulcan's shareholders and all of its other constituencies. Vulcan misses the point by ignoring the significant incremental value creation inherent in this combination. We are proposing a stock-for-stock merger combination in which Vulcan shareholders would own over 58% of the combined company and receive an upfront premium based on pre-announcement stock prices. The transaction would create a U.S.-based company that is the global leader in construction aggregates with a footprint reaching across North America. The combined company would be well-positioned for growth and success with one of the strongest balance sheets in the industry and a dividend that is 20 times Vulcan's current level."

"Despite the rhetoric by Vulcan, the only real obstacle to delivering to Vulcan's shareholders the substantial benefits of the proposed combination is the opposition of Vulcan's Board of Directors. With the support of the Vulcan Board, our offer would be subject only to ordinary course conditions, and we have no reason to believe such conditions would not be satisfied on a prompt basis. In particular, as we have previously stated, we do not believe there are any significant regulatory or legal hurdles to completion of the proposed business combination. In addition, while we believe the proposed exchange ratio and equity split between Vulcan and Martin Marietta is appropriate and compelling, we would consider in good faith demonstrable evidence of additional value."

"It remains Martin Marietta's strong preference to meet with Vulcan to engage in discussions in order to reach a definitive agreement to combine our two companies. Since announcing our proposal on December 12, 2011, we have spoken with a number of Vulcan shareholders, many of whom are also Martin Marietta shareholders, and we are pleased with the support we have received regarding the combination and the powerful financial and operational benefits it is expected to deliver. We are committed to completing this combination and are moving forward on a number of fronts to make it a reality. We encourage Vulcan shareholders to send a strong message to their Board that the proposed combination is a compelling opportunity for Vulcan's shareholders, customers, employees and communities," Mr. Nye concluded.

As previously announced, on December 12, 2011, Martin Marietta commenced an exchange offer in which each outstanding share of Vulcan will be exchanged for 0.50 Martin Marietta shares. The offer represents a premium for Vulcan shareholders of 15% to the average exchange ratio based on the closing share prices for Vulcan and Martin Marietta during the 10-day period ended December 9, 2011 and 18% to the average exchange ratio based on the closing share prices for Vulcan and Martin Marietta during the 30-day period ended December 9, 2011. Martin Marietta also intends to maintain the dividend for the combined company at Martin Marietta's current rate of $1.60 per Martin Marietta share annually, or the equivalent of $0.80 per Vulcan share annually, based on the proposed exchange ratio. This dividend rate is 20 times Vulcan's current level.

Martin Marietta's financial advisors in connection with the proposed transaction are Deutsche Bank Securities Inc. and J.P. Morgan Securities LLC, and its legal counsel is Skadden, Arps, Slate, Meagher & Flom LLP.

56.      The refusal to negotiate with MMM and instead to stonewall the development of a value-maximizing transaction, in the midst of the uncertainty of the world's financial markets and the Company's recent disappointing financial and operational results, has denied Vulcan's shareholders the opportunity to exchange each share of their Vulcan stock for 0.5 shares of

MMM stock, which values those shares at approximately $36.69 per share.  The rejection could unreasonably deprive Plaintiff and class members of a premium based on the offer value, as well as the advantages of maintaining an ownership interest in a combined company that is stronger with better growth prospects than the Company's shareholders currently enjoy.

### The Board Utilizes Defensive Measures To Thwart the MMM Offer

57.     Rather negotiating in good faith, as they are obligated to do, the Individual Defendants instead have refused to continue discussions with MMM concerning a combination of the two companies and are using an array of defensive measures and protections to thwart the realization of a value-maximizing transaction for Vulcan shareholders without the Board's consent.

58.     First, Vulcan has a staggered Board structure that only allows for one third of the Company's twelve directors to be up for election each year.  Because of the staggered Board structure, a potential hostile bidder, including MMM, is required to win a clean sweep of two consecutive shareholder elections in order to attain the necessary votes for approval of an acquisition, which is highly unrealistic given the time and cost involved in maintaining a hostile bid open for so long. Moreover, the staggered Board structure can only be removed by a supermajority vote of 80% of all Company shareholders.

59.     Second, the Board has the power to make critical structural changes without shareholder approval, including filling Board vacancies, increasing the size of the Board, and changes to bylaws.   Thus, the Board can use this power to inhibit the development and consummation of any transaction that does not meet with its approval.

60.     Third, the Board can use director questionnaires and other mechanisms to inhibit the nomination of a third party's candidates to the Board, thus making it all the more unlikely that a third party will be able to even put up its nominees for election.

61.     Fourth, the Company's Charter only allows for removal of directors for cause and with the approval of a majority of the Board.  Thus, with the removal requirements and the fact that the staggered Board may only be altered with a supermajority vote, the Charter creates an Effective Staggered Board since shareholders do not have the power to terminate or alter the Board structure.

62.     Fifth, the New Jersey Shareholder Protection Act prohibits anyone with a 10% stake in the Company from entering into a merger with Vulcan for five years, absent Board approval, and since Vulcan has not opted out of this statute, MMM is prevented from consummating any acquisition of the Company unless the Board approves such an acquisition.

63.     Accordingly, the Individual Defendants have entrenched themselves behind these defensive anti-takeover protections and measures.  Unless the Individual Defendants are forced to negotiate in good faith with MMM and any other interested third party, Vulcan shareholders will be deprived of a value-maximizing transaction.

## DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY

64.     Plaintiff brings its "derivative" claims derivatively in the right and for the benefit of Vulcan to redress injuries suffered by it as a direct result of the breaches of fiduciary duty and other wrongs committed by the Individual Defendants.  Vulcan is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

65.     Plaintiff will adequately and fairly represent the interests of Vulcan in enforcing and prosecuting its rights.

66.     Plaintiff was a holder of Vulcan common stock during the wrongs complained of and remains so now.

67.     Prosecution of this action, independent of the Vulcan Board, is in the best interests of Vulcan.

68.     As a result of the facts set forth throughout this complaint, demand on Vulcan's Board to institute this action against the officers of Vulcan and members of the Vulcan Board is not required because such a demand would be a futile and useless act, particularly for the following reasons:

(i)     Each of the Individual Defendants who serve as directors were personally involved in the unlawful conduct alleged herein, and have demonstrated their lack of disinterest or independence and could not properly consider a demand;

(ii)    The Individual Defendants have benefited, and continue to benefit, from the wrongdoing alleged herein, and have engaged in such conduct to maintain their positions of control and the benefits derived therefrom, including considerable cash and equity awards and other non-monetary perquisites, and are therefore unable to exercise independent judgment in considering a demand;

(iii)   In order to bring this suit, all of the directors of Vulcan would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do;

(iv)     The Individual Defendants are generously compensated for their service on Vulcan's Board and receive other perquisites therefrom, and therefore are willing to protect each other to preserve the status quo;

(v)     Certain of the Individual Defendants serve together on several committees of the Company's Board, including the committees that set policy for compensation, and for that reason none of the other Individual Defendants would risk their compensation packages by initiating litigation against the other Individual Defendants who serve on those committees; and

(vi)     The acts complained of herein constitute violations of state law and the fiduciary duties owed by Vulcan's officers and directors and these acts are incapable of ratification;

**FIRST COUNT**
**(Breach Of Fiduciary Duties**
**Against The Individual Defendants)**

69.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Directors of corporations owe a fiduciary duty to their stockholders and the corporation.  Directors have a duty to give due consideration in good faith to a proposal of a material transaction and to act in the best interests of the stockholders.  Directors also have a fiduciary duty to refrain from interfering with the shareholder franchise and from inequitably manipulating the corporate machinery for improper purposes.

71.     Directors of corporations are required to discharge their duties in good faith, with the care that an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner they reasonably believe to be in the best interests of the corporation and its shareholders.

32

72.     By the acts, transactions and courses of actions alleged herein, and the failure of the Individual Defendants to negotiate with MMM or properly shop the Company or conduct an auction, the Individual Defendants have failed to take steps to maximize shareholder value for the benefit of the Company's public shareholders.

73.     The conduct set forth above constitutes a continuing breach of the Individual Defendants' fiduciary duties to the Company's public stockholders.

74.     Plaintiff and the Class have been irreparably harmed, and continue to be irreparably harmed, as a direct result of Defendants' conduct.

75.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a class action and a derivative action and that Plaintiff is a proper representative party;

B.      Declaring that Defendants have breached their fiduciary duties to Plaintiff and the Class;

C.      Awarding compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon, for all damages sustained as a result of Defendants' failure to negotiate with MMM the terms of the MMM Offer;

D.      Directing the Individual Defendants to exercise their duty of care by giving due consideration to any proposed business combination that would maximize the Company's shareholder value;

E.      Directing the Company and the Individual Defendants to exercise their fiduciary duties by eliminating any barriers that could be used to block any proposed business combination that would maximize the Company's shareholder value;

F.      Directing the Company and the Individual Defendants to adequately ensure that no conflicts of interest exist between the Individual Defendants and their fiduciary obligation to maximize shareholder value or, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of Vulcan's public stockholders;

G.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

                              CARELLA, BYRNE, CECCHI,
                              OLSTEIN, BRODY & AGNELLO
                              Attorneys for Plaintiff


                         By:   /s/ James E. Cecchi
                              JAMES E. CECCHI
Dated: January 19, 2012


Joseph E. White, III
Jonathan M. Stein
Lester R. Hooker
SAXENA WHITE P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, Florida 33431
(561) 394-3399

Frank R. Schirripa
HACH ROSE SCHIRRIPA & CHEVERIE LLP
185 Madison Avenue, 14th Floor
New York, New York 10016
(212) 213-8311

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

> CARELLA, BYRNE, CECCHI,
> OLSTEIN, BRODY & AGNELLO
> Attorneys for Plaintiff
>
>
> By:   /s/ James E. Cecchi
>        JAMES E. CECCHI

Dated: January 19, 2012


Joseph E. White, III
Jonathan M. Stein
Lester R. Hooker
SAXENA WHITE P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, FL  33431
(561) 394-3399

Frank R. Schirripa
HACH ROSE SCHIRRIPA & CHEVERIE LLP
185 Madison Avenue, 14th Floor
New York, New York 10016
(212) 213-8311